ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  03-40014-JAR |
| | ) | 04-3456-JAR |
| JAMES ANTHONY MARPLE, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |
| | ) | |

## MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255

Defendant/petitioner James A. Marple filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255.  (Doc. 42.)  Petitioner argues that the sentence should be vacated in light of the Supreme Court's decision in *Blakely v. Washington*,[1] which struck down Washington's state sentencing scheme as violative of the Sixth Amendment right to a jury trial.  Petitioner maintains that the Federal Sentencing Guidelines (Guidelines) are similarly violative of the Sixth Amendment, and therefore his sentence is unconstitutional.

After petitioner filed this motion, the Supreme Court decided *United States v. Booker*,[2] which struck down the mandatory nature of the Federal Sentencing Guidelines as incompatible with the Sixth Amendment.  Consistent with the Supreme Court's guidance in *Blakely* and *Booker*, this Court denies

---

[1]  542 U.S.__, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[2]  543 U.S. __,125 S. Ct. 738 , 2005 WL 50108 (2005).

1

petitioner's motion because neither *Blakely* nor *Booker* is retroactive to federal criminal cases that

became final before the *Booker* decision was handed down on January 12, 2005.


## I. Procedural Background

On April 7, 2003, Petitioner pled guilty to a one count Information charging him with

possession with intent to distribute more than fifty grams of methamphetamine.  Applying the Sentencing

Guidelines, the Court sentenced him to 87 months of imprisonment, more than the statutory mandatory

minimum of five years and less than the statutory maximum of 40 years.[3]

This sentence was at the low end of the guideline range of 87 to 108 months, based on a total offense

level of 29 and a criminal history category of I.   The Court arrived at the total offense level by: starting

at a base offense level of 28 for the 220.3 grams of methamphetamine found in petitioner's possession

at the time of arrest;[4] applying a two level increase because petitioner was in possession of a handgun

when he committed the crime;[5] and applying a two level increase for obstruction of justice because

petitioner tested positive for methamphetamine while on bond in this case and failed to appear in court

for a hearing.[6]  At the sentencing hearing, the Court sustained petitioner's objection to the Presentence

Report's denial of a reduction for acceptance of responsibility, and applied a three level reduction for

---

[3]  21 U.S.C. § 841(b)(1)(B).

[4]  *See* U.S.S.G. § 2D1.1(c)(6).

[5]  *See* U.S.S.G. § 2D1.1(b)(1).

[6]  *See* U.S.S.G. § 2C1.1.

acceptance of responsibility.[7]  Petitioner did not file a direct appeal of his sentence.

## II.  Analysis

Petitioner argues that his sentence is unconstitutional because the Court enhanced the offense level based on his possession of a firearm, which was not part of his guilty plea.  He claims that this two-point adjustment of his offense level violated his constitutional right to a jury trial under the Sixth Amendment, citing *Blakely v. Washington*.  *Blakely* represents an extension of the rule originally announced in *Apprendi v. New Jersey*, where the Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[8]  In *Blakely*, the Court applied the rule and explained that the statutory maximum under *Apprendi* "is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*,"[9] which is not necessarily the same as the maximum punishment possible under statute.[10]  On this basis, the Court struck down the Washington state sentencing scheme.

In the wake of *Blakely*, courts have grappled with the issue of whether the Federal Sentencing Guidelines were also unconstitutional since they required sentencing judges to make factual findings in a fashion similar to that under the Washington scheme.[11]  The Supreme Court recently resolved this issue

---

[7]  *See* U.S.S.G. § 3E1.1.

[8]  530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000).

[9]  *Blakely*, 124 S. Ct. at 2537 (emphasis in original).

[10]  *Blakely*, 124 S. Ct. at 2538.

[11]  *See Blakely*, 124 S. Ct. at 2548-50 (O'Connor, J., dissenting).

in *United States v. Booker*.[12]  In two separate majority opinions, the Court decided first, that the

mandatory nature of the Guidelines violate the Sixth Amendment for the same reasons that the

Washington state scheme did in *Blakely*.[13]  Second, the Court decided that the appropriate remedy for

this constitutional infirmity is to excise the provision from the Sentencing Reform Act that requires

district courts to apply the Guidelines.[14]  Instead, the Court deemed the Guidelines advisory and

explained that sentencing courts must now consider the sentencing goals as set forth in 18 U.S.C. §

3553(a).[15]  The appropriate standard of review under the new sentencing landscape is whether the

sentence is unreasonable.[16]

Because this is a collateral attack on a final sentence, the Court must first determine if the rule

announced in *Booker* may retroactively apply to this petitioner.  While the Supreme Court did state:

"we must apply today's holdings–both the Sixth Amendment holding and our remedial interpretation of

the Sentencing Act–to all cases on direct review;"[17] the Supreme Court did not state whether its holding

applied to cases on collateral review.  The Tenth Circuit has not yet decided whether *Booker* should

apply retroactively to cases on collateral review.

In *Schriro v. Summerlin*, the Supreme Court spoke to the issue of retroactivity just prior to

---

[12]  543 U.S. __,125 S. Ct. 738 , 2005 WL 50108 (2005).

[13]  *Booker*, 125 S. Ct. at 745 (Stevens, J.).

[14]  *Booker*, 125 S. Ct. at 756 (Breyer, J.).

[15]  *Id.* at 764.

[16]  *Id.* at 765.

[17]  *Booker*, 125 S. Ct. at 769 (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).

4

deciding *Blakely*.  The Court restated the precept that new rules announced by the Court only apply to criminal convictions that are final in limited circumstances.[18]  Generally, new substantive rules will apply retroactively while new procedural rules will not.[19]  However, a small number of procedural rules are given retroactive effect if they are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."[20]  The Supreme Court has described such a rule as one "without which the likelihood of an accurate conviction is *seriously* diminished.  This class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge."[21]

This Court finds that the rule announced in *Booker* is procedural because it only "regulate[s] the *manner of determining* the defendant's culpability."[22]  In *Summerlin*, the Supreme Court refused to retroactively apply *Ring v. Arizona*[23] to collateral cases.  *Ring* held that a sentencing judge could not find an aggravating circumstance necessary for imposition of the death penalty because the Sixth Amendment requires such a factor to be found by a jury.[24]  This Court finds that the *Summerlin* rationale applies with equal force to the rule announced in *Booker*.  "Rules that allocate decisionmaking

---

[18]  *Schriro v. Summerlin*, 542 U.S. __, 124 S. Ct. 2519, 2522, 159 L. Ed. 2d 442 (2004).

[19]  *Id.*

[20]  *Summerlin*, 124 S. Ct. at 2523 (internal quotations omitted); *Teague v. Lane*, 489 U.S. 288, 312-13,109 S. Ct. 1257, 1060, 103 L. Ed. 2d 334 (1989).

[21]  *Summerlin*, 124 S. Ct. at 2523 (internal quotations omitted) (emphasis in original).

[22]  *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 620-21, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)) (emphasis in original).

[23]  *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

[24]  *Summerlin*, 124 S. Ct. at 2526 (discussing *Ring v. Arizona*).

authority in this fashion are prototypical procedural rules."[25]  As was the case in *Ring*, *Booker* is

primarily concerned with the identity of the decisionmaker and the burden of proof required to

determine a given sentence.  The decision does not determine what type of primary conduct is lawful or

unlawful.

Furthermore, the Court finds that *Booker* does not constitute one of those rare "watershed

rules of criminal procedure" that could be applied retroactively to cases on collateral review.  In order

to constitute such a rule, it must "so 'seriously diminish' accuracy that there is an 'impermissibly large

risk' of punishing conduct the law does not reach."[26]  In *Summerlin*, the Supreme Court found the

evidence overwhelmingly did not support such a conclusion about jury factfinding.

The Tenth Circuit has held that *Blakely* does not apply to cases on collateral review,[27] and

other circuits have held that *Booker* does not apply to cases on collateral review.[28]  This Court agrees

with the reasoning of the Seventh Circuit in *United States v. McReynolds*, which followed *Summerlin*

---

[25]  *Summerlin*, 124 S. Ct. 2523 (collecting cases where the Court has reached the same conclusion in other contexts).

[26]  124 S. Ct. at 2525 (quoting *Teague v. Lane*, 489 U.S. 288, 312-13,109 S. Ct. 1257, 1060, 103 L. Ed. 2d 334 (1989) (quoting *Desist v. United States*, 394, U.S. 244, 262, 89 S. Ct. 1030, 22 L. Ed. 2d 248 (1969))).

[27]  *Leonard v. United States*, 383 F.3d 1146, 1147-48 (10th Cir. 2004); *United States v. Price*, No. 04-7058, 2004 WL 2905381, *4 -5 (10th Cir. Dec. 16, 2004); *cf. United States v. Leonard*, No. 04-6197, 2005 WL 139183, *2 (10th Cir. Jan. 24, 2005) ("New rules of criminal procedure, however, are applied retroactively only to cases pending on direct review or cases that are not yet final. . . . Thus, *Blakely*, as well as the Supreme Court's more recent decision in *United States v. Booker* . . . have no applicability to Leonard's sentence.").

[28]  *McReynolds v. United States*, __F.3d__, Nos. 04-2520, 04-2632, 2844, 2005 WL 237642 (7th Cir. Feb. 2, 2005) *Green v. United States*, __F.3d__, No. 04-6564, 2005 WL 237204, *1 (2d Cir. Feb. 2, 2005); In re *Anderson*, __F.3d__, No. 05-10045-F, 2005 WL 123923, *3 (11th Cir. Jan. 21, 2005).

in concluding that *Booker* does not apply to cases on collateral review.[29]  Because *Blakely* reserved

judgment on the constitutionality of the Guidelines,[30] *Booker* constitutes the new rule on the Guidelines

that petitioner seeks to have applied to his case.  Because the Supreme Court filed its decision in

*Booker* on January 12, 2005, that is "the appropriate dividing line."[31]

Petitioner's only argument in his motion to vacate is that his sentence is unconstitutional based

on *Blakely*.  The Court finds that the rule explained in *Blakely* may only apply to the petitioner vis-a-vis

*Booker*, which for the first time applied *Apprendi* and *Blakely* to the Federal Sentencing Guidelines.

Because the Court finds that this new procedural rule is not a watershed rule of criminal procedure, and

because petitioner's sentence was final on October 10, 2003, the rule announced in *Booker* does not

apply.[32]

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion to Vacate Sentence

Pursuant to 28 U.S.C. § 2255 (Doc. 42) is **DENIED**.

IT IS SO ORDERED.

Dated this 21st  day of February 2005.

   S/ Julie A. Robinson
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**

---

[29] *McReynolds*, 2005 WL 237642, at *2.

[30] *Blakely*, 124 S. Ct. at 2538 n.9 ("The Federal Guidelines are not before us, and we express no opinion on them.").

[31] *McReynolds*, 2005 WL 237642, at *2.

[32] *See* 28 U.S.C. § 2255(1), (3).

8